HARRY ALTSULER ET AL., APPELLANTS, v. WILLIAM E. PETERS, STATE TAX COMMISSIONER, APPELLEE.
SHELDON COHEN ET AL., APPELLANTS, v. WILLIAM E. PETERS, STATE TAX COMMISSIONER, APPELLEE.
HAROLD B. BRODKEY ET AL., APPELLANTS, v. WILLIAM E. PETERS, STATE TAX COMMISSIONER, APPELLEE.
RUTH KAY O'HANLON, INDIVIDUALLY, AND RUTH KAY O'HANLON, TRANSFEREE OF PROPERTY OF REED O'HANLON, SR., DECEASED, APPELLANT, v. WILLIAM E. PETERS, STATE TAX COMMISSIONER, APPELLEE.
206 N. W. 2d 570

Filed April 13, 1973. Nos. 38812, 38813, 38816, 38817.

114

McGrath, North, Nelson, Shkolnick & Dwyer, for appellants.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Lyle E. Strom of Fitzgerald, Brown, Leahy, McGill & Strom, for amicus curiae.

Heard before SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ., and COLWELL, District Judge.

CLINTON, J.

The four cases which are before us on this appeal involve primarily the construction of the Nebraska Revenue Act of 1967, and secondarily, depending on the construction adopted, claims of unconstitutionality either in the Act or its application by the State Tax Commissioner who is charged with its administration.

The Commissioner proposed deficiencies against each of the appellants by requiring inclusion in their 1968 individual incomes certain income which they had excluded. All the taxpayers filed protests pursuant to section 77-2778, R. R. S. 1943. The Commissioner sustained the deficiencies in all cases. All the taxpayers then filed appeals to the District Court pursuant to section 77-27,127, R. R. S. 1943. The Commissioner demurred to each petition. The trial court sustained the demurrers and dismissed the petitions on appeal. The appellants each then perfected their appeals to this court where the cases were, by stipulation and order of this court, consolidated for briefing and argument. All the appellants are resident taxpayers.

## The Nebraska Revenue Act

The Nebraska Revenue Act of 1967 imposes an income tax which is a flat percentage, determined annually, of the taxpayer's adjusted federal income tax liability for the taxable year. §§ 77-2715, 77-2715.01, R. R. S. 1943. None of the modifications to determine "adjusted" federal income tax liability are relevant to our discussions of the issues. § 77-2716, R. R. S. 1943.

For the most part the terms used in the Act "have the same meaning as when used in a comparable context" in the federal income tax law. References in the Act to the law of the United States means "the provisions of the Internal Revenue Code of 1954, and amendments thereto, . . . and the rules and regulations issued under such laws, as the same may be or become effective, at any time or from time to time, for the taxable year." § 77-2714, R. R. S. 1943.

The determination of the issues which we must decide are related principally to the interpretation of the following section of the Act and the regulations adopted by the Commissioner to effectuate the statute: "Sections 77-2701 to 77-27,135 shall take effect immediately and shall be applicable with respect to items of income, deduction, loss or gain realized in taxable years ending on or after January 1, 1968. For the purpose of facilitating the administration of the tax imposed by the provisions of sections 77-2701 to 77-27,135 during the transitional period, the Tax Commissioner shall provide by regulation for the filing of returns in respect to taxable periods of less than twelve calendar months ending after January 1, 1968, and prior to December 31, 1968." § 77-27,124, R. R. S. 1943.

The Issues

Five issues are presented for determination: (1) Is a taxpayer, who files his individual return on a calendar year basis and who derived all or a part of his income from a partnership which reported its income for federal income tax purposes for a fiscal year which ended in 1968, required to include his entire share of the partnership income for its full fiscal year on his individual state income tax return for 1968, or is he entitled to adjust his reported federal income tax liability by excluding a portion of the partnership income in a manner comparable to that permitted under the regulations of the Commissioner to an individual fiscal year taxpayer who may adjust his reported federal income tax liability by excluding a portion of his income attributable to that part of the fiscal year preceding January 1, 1968? (2) The second issue is the counterpart of that stated as issue (1) above except that the taxpayer is a shareholder of a corporation reporting its income on a fiscal year basis and the corporation and its stockholders have made a valid election under Subchapter S, Internal Revenue Code of 1954, to have its undistributed taxable income taxed to the shareholders. (3) Is a

taxpayer who is a member of a fiscal year partnership which reported the 1967 sale of a capital asset on its 1967-68 federal income tax return required to include that sale in determining his 1968 state income tax, or is he entitled to exclude it under the Act and the regulations issued by the Commissioner? (4) May a taxpayer, who, prior to January 1, 1968, sold real estate at a profit under the terms of an installment contract and elected under federal income tax law to report the gain on an installment basis, exclude for purposes of determining his 1968 state income tax liability the installment received in 1968? (5) May a taxpayer, who in 1968 sells a capital asset acquired prior to 1968, claim as a basis for determining gain the fair market value of the property as of January 1, 1968, and so exclude in determining his gain on the sale the increment of value which accrued prior to January 1, 1968?

Each of the issues presented here are not common to all four cases. We will discuss each issue in the abstract, but will at the end of the opinion set forth the disposition in each case as it is determined by our holding on the specific issues.

Issue No. 1—The Transitional Period
and the Partnership Fiscal Year

Pursuant to the provisions of section 77-27,124, R. R. S. 1943, the Commissioner enacted regulations "facilitating the administration of the tax . . . during the transitional period" which pertain to "returns in respect to taxable periods of less than twelve calendar months ending after January 1, 1968, and prior to December 31, 1968." It is evident the Legislature recognized that upon the taking of effect of the Nebraska Revenue Act on January 1, 1968, problems were created with reference to the preparation of state income tax returns and the accounting for income of those taxpayers who would be affected by their prior election to file federal income tax returns on a fiscal year basis. The statute in effect directs the Commissioner to solve the problem by reg-

ulation. To accomplish that purpose the Commissioner adopted the following regulations: "A return for a short period shall also be filed by any fiscal year taxpayer whose fiscal year ended during 1968. Such fiscal year short period income shall be determined as follows:

"Individuals: The short period income shall be determined by first excluding any capital gains or losses and any interest received on U. S. obligations from the total fiscal year income. This amount shall be multiplied by the fraction of the number of days in the short period over the total number of days in 1968. . . .

"Any taxpayer who can determine that the fractional method of reporting income does not closely reflect such short period income, and has records of income, deductions or credits which are sufficient to identify them to the short period so as to accurately state the short period tax liability may request permission to use a separate accounting method of reporting." TC-27-3.

In the same regulation the Commissioner has provided for the filing of short period returns for corporations, estates, and trusts whose fiscal years end in 1968. The Commissioner did not include partnerships in the regulation. Unless a partnership elects to be taxed as a corporation it pays neither a federal nor a state income tax. § 701, I. R. C. 1954; TC-26-2. The partners, in the absence of such an election, must account for and pay tax on the partnership income whether distributed to them or not.

It, of course, is clear that the Legislature intended to tax only income realized after December 31, 1967. The term realized, as we will note later, has come to have in federal tax law a well-recognized meaning. The Commissioner recognized the legislative intent in TC-27-3 and also in regulations TC-23-5 and TC-23-6. In TC-23-5 the Commissioner specifically provides that only capital gains or losses realized from sales or exchanges of property on and after January 1, 1968, are

to be included in computing the taxpayer's adjusted federal income tax liability. In TC-23-6 he prohibits the use of loss carry-overs unless they were realized after January 1, 1968, despite the fact that losses occurring prior to that date can, under federal law, be carried over and affect the liability for the 1968 federal income tax of the taxpayer. These regulations clearly authorize the fiscal taxpayer to exclude gains realized and requires him to exclude losses realized within his 1967-68 fiscal year, but occurring prior to January 1, 1968.

In support of his action giving different treatment to calendar year taxpayers, who, during the "transitional period," derived all or portions of their ordinary income from partnerships reporting on a fiscal year basis, the Commissioner relies upon section 706(a), I.R.C. 1954, and the corresponding treasury regulations. Section 706(a) reads as follows: "In computing the taxable income of a partner for a taxable year, the inclusions required by section 702 and section 707(c) with respect to a partnership shall be based on the income, gain, loss, deduction, or credit of the partnership for any taxable year of the partnership ending within or with the taxable year of the partner."

All this, of course, is very clear, but the question is, has it any application under the provisions of section 77-27,124, R. R. S. 1943, "during the transitional period," or did the Legislature intend that the reporting and accounting of partnership income during that period be provided for by regulation to be adopted by the Commissioner in a manner similar to that provided by the Commissioner for individuals, corporations, and trusts? There is no evidence in the Act itself that the Legislature intended to treat persons who derive all or a portion of their income from partnership sources differently from the manner in which other persons, including corporations and trusts, are treated. It may be worth noting at this point that corporations and trusts may be

members of partnerships and derive part of their income from that source.

The Commissioner argues that partnership income is not realized by the partner until the end of the partnership year because, among other considerations, before that time it cannot be known whether there is a profit or a loss for the partnership fiscal year. This is true, but it is equally true of a sole proprietorship, a corporation, or a trust, all of whom under regulation TC-27-3 may file short period returns during the transitional period. In so doing, they have an option. They can either multiply the fiscal year income (less capital gain), "by the fraction of the number of days in the short period over the total number of days in 1968," or if the accounting records are sufficient "to identify them [income item and deductions] to the short period so as to accurately state the short period tax liability [they] may request permission to use a separate accounting method of reporting." Either of these methods is equally adaptable to a partnership. There is one difference, however, that has significance. The partnership consists of more than one taxpayer. It seems evident that if the total partnership income is to be accurately reflected and the Commissioner is to be able to conveniently reconcile the partnership income with the distributive shares reported on the individual returns, only one of the alternative methods may be used by the partners of a given partnership, i.e., one partner could not use the "fraction[al]" method and the other the "separate accounting method." It therefore appears that an appropriate regulation would have to either (1) limit the methods to one or the other for partners in general, or for the partners of a particular partnership; or (2) require the partnership itself to file a separate informational return for the short period as a condition precedent to the use by the partners of the short period in accounting for partnership income.

The Commissioner in support of his position that the

partner does not "realize" income until the end of the partnership year points to section 77-2728, R. R. S. 1943, which reads as follows: "Each item of partnership income, gain, loss, or deduction shall have the same character for a partner under the provisions of sections 77-2701 to 77-27,135 as it has for federal income tax purposes. Where an item is not characterized for federal income tax purposes, it shall have the same character for a partner as if realized directly from the source from which realized by the partnership or incurred in the same manner as incurred by the partnership."

It appears to us that this section, like section 706(a), I.R.C. 1954, has nothing at all to do with the initial year, the "transitional period" or determining when the income tax law becomes effective for particular taxpayers. Section 706(a), I.R.C. 1954, deals with when partnership income must be reported. Section 77-2728, R. R. S. 1943, which is a counterpart of section 702, I.R.C. 1954, the corresponding federal tax law, deals with the retained "character" of income realized from a partnership, i.e., if a partnership has a capital gain or loss, it is still a capital gain or loss when the partner accounts for it. This he does not do as ordinary partnership income, but upon the separate Schedule D of his individual federal return. Likewise, ordinary income of the partnership is treated as ordinary income by the partner where this characterization makes a difference for tax purposes. Likewise, dividends received by a partnership are dividends on the return of the partner for purposes of the dividend exclusion.

The Commissioner has specifically recognized this characterization of income in his regulation pertaining to capital gains and losses realized previous to January 1, 1968. He has not attempted to treat a partner differently in this respect.

What it all boils down to is that neither section 706(a), I.R.C. 1954, nor section 77-2728, R. R. S. 1943, support

the Commissioner's position on the interpretation of the statute.

The net effect of the Commissioner's treatment of the income in these cases is to have the Act take effect sometime in 1967 insofar as it relates to partners who are members of partnerships having a fiscal year ending in 1968. For example, in the case of a partner whose partnership has a fiscal year beginning March 1, 1967, he would be required to report and account for his income from the partnership beginning March 1, 1967. Depending upon the beginning date of other partnership fiscal years, other persons deriving income from the partnerships would be accountable for 1967 income for varying periods of time. For these persons the Act would as a practical matter be effective before January 1, 1968. We see nothing in the Act, whatever, to indicate a legislative intention to discriminate in this way against those doing business in the partnership form.

The Commissioner cites four cases which support the position that the Congress and the states may make changes in income tax law, as by change of rate, which affect adversely partners who must report income for a period which overlaps the changes, i.e., have retroactive effect. These cases are Shonnard v. Price, 49 F. 2d 794; Shunk v. Commissioner of Internal Revenue, 173 F. 2d 747; Andrews v. Franchise Tax Board, 275 Cal. App. 653, 80 Cal. Rptr. 403; Byard v. Commissioner of Taxation, 209 Minn. 215, 296 N. W. 10. We have no quarrel with the cases as they apply after the "transitional period," however. they are no help in determining the question of legislative intent on the issue before us.

Here again the Commissioner returns to the argument that income of a partnership is not realized until the end of the accounting period. This argument, we believe, mistakes the meaning of the word "realized" as used in the statutes and overlooks the somewhat dual nature of the partnership. A partnership for some purposes is an entity and for others a mere conduit. The

Supreme Court of the United States in a recent case, United States v. Bayse, — U. S. —, 93 S. Ct. 1080, 35 L. Ed. 2d 412 (February 27, 1973), had occasion to say this: "Section 703 of the Internal Revenue Code of 1954, insofar as pertinent here, prescribes that '[t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual.' 26 U.S.C. § 703(a). Thus, while the partnership itself pays no taxes, 26 U.S.C. § 701, it must report the income it generates and such income must be calculated in largely the same manner as an individual computes his personal income. For this purpose, then, the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners. Once its income is ascertained and reported, its existence may be disregarded since each partner must pay tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed." In a footnote it then adds: "The legislative history indicates, and the commentators agree, that partnerships are entities for purposes of calculating and filing informational returns but that they are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares. See, e.g., H. R. Rep. No. 1337, 83d Cong., 2d Sess., 65-66 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess., 89-90 (1954), U. S. Code Cong. & Admin. News 1954, p. 4017; 6 J. Mertens, Law of Federal Income Taxation § 35.01 (1968); S. Surrey & W. Warren, Federal Income Taxation 1115-1116 (1960); Jackson, Johnson, Surrey, Tenen & Warren, The Internal Revenue Code of 1954: Partnerships, 54 Col. L. Rev. 1183 (1954)."

Nothing, it seems, could make it clearer that the partner realizes the income or the loss when the partnership does. The Commissioner's regulations make this very clear insofar as a capital gain or loss is concerned, but he has failed to implement the legislative intent with reference to other income items of the partnership. The

term "realized" has for a very long time had a well-established connotation. In general it means received, paid, debited, or incurred, in accordance with the method of accounting authorized for use by the taxpayer. See, MacLaughlin v. Alliance Ins. Co., *post;* City National Bank of Clinton v. Iowa State Tax Commission, *post;* Norman v. Bradley, 173 Ga. 482, 160 S. E. 413; Fullerton Oil Co. v. Johnson, 2 Cal. 2d 162, 39 P. 2d 796.

It seems obvious to us that this is what the Legislature meant and that the very reason why it directed the Commissioner to make the regulations for the transitional period was to take into account the complexities which would arise because some taxpayers had long before elected the fiscal years under the federal law or would be affected by fiscal year returns such as in à partnership. For the reasons we have set forth we are convinced that the Legislature did not intend to discriminate against partners insofar as the effective date of the Nebraska Revenue Act of 1967 was concerned.

The cases before us must be decided as though the Commissioner had adopted an appropriate regulation. The affected appellants ask us to determine that they correctly determined their 1968 income tax insofar as partnership income is concerned. This we cannot do for the case was determined on demurrer and the evidence is not before us. We have, however, laid down the rules. The affected cases must be remanded. No doubt the parties can now settle the matter.

The foregoing disposition of the issue makes it unnecessary to consider the claims of unconstitutionality.

Issue No. 2—Income of Shareholder
From Subchapter S Corporation

It is agreed by the parties that with some differences which are not material in these cases, the undistributed income of the corporation having in effect a valid Subchapter S election is treated in the same manner as partnership income. § 1372, I.R.C.; § 77-2734(3), R. R. S. 1943; TC-24-4. What we have said on issue No. 1

requires disposition of this issue in the same manner. A transitional regulation should be applied.

.       Issue No. 3—Accounting by Partner for Sale
by Partnership of Capital Asset Prior to
January 1, 1968, But Within the Partnership
1967-68 Fiscal Year

What we have already said in connection with our decision on issue No. 1 also determines this question. Under both state and federal income tax law, sections 77-2727 and 77-2728, R. R. S. 1943, and section 703, I.R.C. 1954, only the partners pay income tax and the character of income of the partnership retains the same character when accounted for by the partners. Section 77-27,124, R. R. S. 1943, makes the Act applicable "to items of income, deduction, loss or gain realized in taxable years ending on or after January 1, 1968." It follows that a capital gain or loss realized by a partnership prior to January 1, 1968, is not includable in determining partners income tax liability for 1968. This is implicit in TC-23-5 and TC-23-6 adopted by the Commissioner under the Act.

Issue No. 4—Installment Sale Prior to
January 1, 1968—Installment Received
After January 1, 1968

The Act, except as otherwise provided therein, adopts generally as a basis for determining state income tax liability on income derived from Nebraska sources, the federal income tax law, rules, and regulations. See especially sections 77-2714, 77-2715, 77-2716, and 77-27,124, R. R. S. 1943. That purpose has been implemented by the regulations adopted by the Commissioner. Among these regulations is the following: "Taxation of Capital Gains and Income Received on or After January 1, 1968, but Pursuant to an Installment Sale Contract Executed Prior to January 1, 1968.—If any property was sold prior to January 1, 1968, under an installment contract which conforms to the provisions of Section 453 of the Internal Revenue Code, the capital

gain portion of, or the income portion of, any contract payment received on or after January 1, 1968, is to be included in the computation of the taxpayer's adjusted federal income tax liability which is subject to the Nebraska tax rate. The federal rules and regulations regarding cost basis, capital gains status, ordinary income status, and holding period determination are controlling for the purposes of the Nebraska income tax." TC-23-7.

The taxpayer, in a sense, realizes a gain on an appreciated asset when he sells it, even though he has contracted to take the proceeds over a period of time. Under the provisions of section 453, I.R.C. 1954, if the requirements of that section are met, he may report the gain in installments. The statute and the regulation give him the option of postponing the recognition of a portion of the gain. In effect, he has the option of treating the gain as completely realized at the time of sale, or he may postpone partially the tax consequences until he has actual realization by receiving the installment. It makes little difference whether we say the gain is realized but recognition is postponed, or say that there is no realization until receipt of the installment. In the absence of some contrary indication in the Nebraska Revenue Act of 1967 it appears to us, as we have already indicated, that the Legislature used the term realized, in the context we are now using it, primarily in the sense of received. The following cases cited by the Commissioner support his position. Snell v. Commissioner of Internal Revenue, 97 F. 2d 891; Katzenberg v. Comptroller of Treasury, 263 Md. 189, 282 A. 2d 465; Marco Associates, Inc. v. Comptroller of the Treasury, 265 Md. 669, 291 A. 2d 489. Appellants cite no contrary cases. Regulation TC-23-7 is valid and effectuates the legislative intent.

Issue No. 5—Basis of Capital Assets
Acquired Before January 1, 1968

The appellant contends that a statute which au-

thorizes the taxation of that portion of the gain on the sale of a capital asset represented by appreciated value accruing prior to the effective date of the income tax act, violates Article I, section 3, of the Nebraska Constitution, and Article 14, section 1, of the United States Constitution, and that he is entitled to deduct in computing gain all appreciation in value accruing prior to January 1, 1968.

The Commissioner adopted TC-23-5 which incorporates the federal rules of law and regulations for determining basis.

Both parties cite MacLaughlin v. Alliance Ins. Co., 286 U. S. 244, 52 S. Ct. 538, 76 L. Ed. 1083; and City National Bank of Clinton v. Iowa State Tax Commission, 251 Iowa 603, 102 N. W. 2d 381. We have carefully read these cases and conclude that they support the position of the Commissioner and not that of the appellant. It is true that in both cases the taxing acts themselves allowed a basis of fair market value as of the date of the taxing act. The courts did not, however, say that the taxing of gain accrued prior to the effective date of the Act was unconstitutional. Quite to the contrary, the Supreme Court of the United States in MacLaughlin v. Alliance Ins. Co., *supra*, said: "The tax being upon realized gain, it may constitutionally be imposed upon the entire amount of the gain realized within the taxable period, even though some of it represents enhanced value in an earlier period before the adoption of the taxing act." We have carefully read the cases supporting the appellant's contention as well as the other cases cited by the Commissioner. Most of these are discussed by the Iowa court in City National Bank of Clinton v. Iowa State Tax Commission, *supra*. Further discussion is not merited. Regulation TC-23-5 effectuates the purpose of the Act and is valid.

### Disposition

In Altsuler, No. 38812, issues Nos. 1 and 4 are involved. The position of the appellants is sustained on

issue No. 1 and that of the Commissioner on issue No. 4.

In Cohen, No. 38813, issues Nos. 1, 2, and 3 are involved. The position of appellants is sustained on all issues.

In Brodkey, No. 38816, issue No. 5 is involved. The position of the Commissioner is sustained.

In O'Hanlon, No. 38817, issue No. 1 is involved. The position of the appellant is sustained.

The order of the lower court is sustained in No. 38816. The other cases are reversed and the causes remanded.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.