Charles H. TIEDEMANN and
Frances D. Tiedemann

v.

Ernest H. JOHNSON, State Tax Assessor.

Supreme Judicial Court of Maine.

March 5, 1974.

Verrill, Dana, Philbrick, Putnam & Williamson, by Thomas J. VanMeer, Portland, for plaintiffs.

Waldemar G. Buschmann, Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

For our consideration is a cause before us on report pursuant to Rule 72(b) of the Maine Rules of Civil Procedure. A decision of the cause requires us to interpret the Maine Income Tax Law, (36 M.R.S.A. § 5101 et seq.)

The questions presented for our decision are appropriately formulated as:

I. Whether, in computing taxable income under the Maine Income Tax Law, income received by installment payments subsequent to the effective date of the Tax Law, but arising from a sale of real estate completed prior to that date, may be subjected to taxation, and

II. Whether such taxation, if intended by the Legislature, is impermissibly retroactive under the Maine or United States Constitutions.

For reasons which will appear, we find that the State Tax Assessor properly assessed tax deficiencies against appellants, and that the applicable taxing provisions are constitutionally sound as applied to the facts presented.

The agreed statement of facts reflects that on February 7, 1969, appellants entered into a purchase and sale agreement whereby they contracted to sell their home in Westbrook, Maine, to the W. H. Nichols Company, a Massachusetts corporation, for the sum of $107,400.00.

Under the terms of this agreement which was completed by the passing of legal title to the Company on February 28, 1969, appellants were to be paid, and were in fact paid, as follows:

(a) $7,500.00 on February 7, 1969, the date of execution of the purchase and sale agreement.

(b) $19,350.00 on February 28, 1969, the closing date.

(c) $26,850.00 on March 7, 1970.

(d) $26,850.00 on March 7, 1971.

(e) $26,850.00 on March 7, 1972.

The Company's obligation on the three installment payments for the years 1970, 1971 and 1972 was evidenced by a promissory note dated February 28, 1969, and secured by a purchase money mortgage.

The home which was the subject of this transaction was purchased by appellants in 1953. Under Sec. 1011 of the Federal Internal Revenue Code,[1] the adjusted cost basis of the home was $21,500.00.

Taking advantage of various Internal Revenue Code provisions permitting exclusion from gain on the sale of a residence, appellants succeeded in reducing significantly their 1969 taxable gain for federal purposes. That gain, in turn, was partially deferred to subsequent tax years, by appellants' election of the "installment method" of reporting contained in Sec. 453 of the Code.

By operation of Sec. 453, appellants reported $9,433.00 of long-term capital gains on their joint federal income tax returns for each of the years 1969, 1970 and 1971.

The Maine Income Tax Law[2] became effective on July 1, 1969, a few months after the appellants sold their home.

1969, c. 154, (P. & S.L. § F3) provided:

"Effective date. Section F of this Act shall take effect as to corporations January 1, 1969, and to all other taxpayers covered under this part July 1, 1969 and shall be applicable with respect to items of income, deduction, loss or gain accruing in taxable years ending on or after such effective date but only to the extent such items have been earned, received, incurred or accrued on or after such effective date."

■ Turning to appellants' Maine income tax returns, we find that they properly excluded from 1969 Maine income any gain realized on the sale of the Westbrook residence.[3] As such, no deficiency was assessed for 1969.

On their Maine returns for 1970 and 1971, appellants also excluded gains attributable to the home sale, even though the gains were reported on appellants' federal returns.

Appellee Tax Assessor subsequently proposed assessment of deficiencies for 1970 and 1971. Appellants made timely protest and were accorded hearing, following which the deficiencies were affirmed.

Appellants appealed to the Superior Court.[4]

This report resulted.

The thrust of appellants' argument is that since the gain which they realized on the sale of the home is traceable, in their view, to its appreciation in value for all the years during which they owned the home (1953–1969), and since the date of sale was actually prior to the effective date of the taxing statute, the imposition of tax liability on the proceeds of the sale is neither intended nor constitutionally permissible, even if part of the proceeds are received as money in hand *after* the effective date, via installment payments.

We must first consider whether the applicable provisions are in fact designed to tax the installment payments, representing as they do proceeds from the sale of a capital asset prior to the effective date of the law.

1. Internal Revenue Code of 1954, as amended (26 U.S.C.A. § 1 et seq.)

2. P. & S.L.1969, c. 154, Sec. F.

3. P. & S.L.1969, c. 154, Sec. F2 permitted taxpayers to report only that income attributable to the period of the tax year during which the Tax Law was effective, *viz.*, July 1, 1969, to December 31, 1969. For purposes of their 1969 Maine return, appellants' receipt of income on the home sale preceded July 1.

4. 36 M.R.S.A. § 5300.

On this point, we find the phraseology of the applicable sections of the statute to be less than clear. Moreover, the legislative record is barren of comment which might aid us in ascertaining the meaning of the equivocal and contradictory passages.

Faced with such ambiguities, we must consider, in addition to the words of the statute, other relevant indicators of the purposes, policies and intentions of the law-makers.

Although conceding that, as provided in 36 M.R.S.A. § 5121, the taxable income of a Maine resident is computed on the basis of ". . . his federal adjusted gross income as defined in the laws of the United States," appellants emphasize the remaining language of the section, ". . . with the modifications and less the deductions and personal exemptions provided in this chapter."

The critical "modification" which appellants maintain would exclude the installment payments from Maine taxation in 1970 and 1971 is Sec. F3, supra, under which the Tax Law applies:

" . . . with respect to items of income, deduction, loss or gain *accruing* in taxable years ending on or after [July 1, 1969] but only to the extent such items have been earned, received, incurred, or accrued on or after such effective date." (Emphasis supplied)

Focusing on the words "gain accruing," appellants argue that the Legislature intended to exclude from taxation the type of gain at issue here, i.e., one which "accrued" over the years, and which was "realized" prior to July 1, 1969.

The Tax Assessor, on the other hand, argues that by adoption of federal adjusted gross income as the standard by which Maine income would be measured,[5] the Legislature purposefully sought to simplify the entire Maine tax assessment and collection system by utilizing a clear, objective criterion, and thus avoiding the pits and falls which accompany administrative or judicial inquiries into the "nature" or "origin" of particular items of individual income. By this view, since the installment payments on the house sale were taxed as federal income in 1970 and 1971, they were automatically subject to Maine taxation.

The problem of state taxation of so-called "accrued gains" attributable to transactions occurring before effective statute dates has been litigated elsewhere.

There has been no unanimity in judicial resolution of the question, however.

Appellants embrace the reasoning of the Illinois Supreme Court in Thorpe v. Mahin, 43 Ill.2d 36, 250 N.E.2d 633 (1969). Amplifying a declaratory judgment upholding the Illinois Income Tax Act[6] against broad constitutional attack, the Court found, *inter alia*, that for purposes of computing capital gains and losses, the Illinois Legislature intended that the value of property acquired prior to the Tax Act's effective date would be limited to the value of the property "as of" that date. 250 N.E.2d 633, 640.

Declaring that the Illinois Act was made expressly prospective in its operation,[7] the Court observed that:

"The Act does not state, however, whether the basis for determining gain or loss from the sale or exchange of a capital asset purchased or acquired prior to August 1, 1969, should be its August 1, 1969, value or its date of acquisition

---

5. 36 M.R.S.A. § 5121.

6. The Illinois Act became effective August 1, 1969. Public Act 76–261, L.1969 (Ill.).

7. For this conclusion, the Court looked to a portion of the Illinois Act which is strikingly similar to Sec. F3 of the Maine Act. Sec. 202(b)(2) of the Illinois Act states in part:

". . . There shall be taken into account in computing base income only those items earned, received, paid, incurred or accrued after July 31, 1969 . . . ."

value . . . . (I)t is most unusual that the tax would be made prospective by such specific language and the basis date for computing gain on the sale or exchange of property should be made retroactive by such nonspecific language, particularly when the rule of statutory construction is that statutes will not be construed retroactively unless it clearly appears such was the legislative intent." *Id*. at 640.

The Court concluded that retroactive application was not intended, and therefore adopted the date of enactment valuation basis.

Affirming *Thorpe* in Mitchell v. Mahin, 51 Ill.2d 452, 283 N.E.2d 465 (1972), cert. den., 409 U.S. 982, 93 S.Ct. 317, 34 L.Ed. 2d 245 (1972), the Illinois Court adhered to its earlier reasoning, and suggested that the *Thorpe* interpretation had been ratified by the Illinois Legislature's enactment of an amendment specifically adopting an effective date valuation limitation.[8]

Our discovery in the Maine Act of the same legislative intentions outlined in *Thorpe* and *Mitchell* would, arguably, permit prompt resolution of the instant case in appellants' favor. Having disposed of their home before the Maine Act became effective, appellants argue under the *Thorpe* approach, that *all* gain on the sale "accrued" before the effective date, with the result that no tax liability could attach.

The alternative judicial approach is represented by decisions of the Maryland Court of Appeals in Katzenberg v. Comptroller of Treasury, 263 Md. 189, 282 A.2d 465 (1971), and Marco Associates, Inc. v. Comptroller of Treasury, 265 Md. 669, 291 A.2d 489 (1972).

In *Katzenberg,* the Court of Appeals determined that under the 1967 Maryland Capital Gains Tax Act, the petitioners could be taxed on payments received in 1967 and 1968 arising from installment sales of capital stock completed in the years 1962–1964. Like appellants here, the *Katzenberg* taxpayers had accepted promissory notes for the obligations, and elected to defer federal income tax recognition of gain on the installment payments by invocation of Sec. 453 of the Code.

Though couched in different language, certain of the challenges raised by the *Katzenberg* taxpayers are functionally equivalent to those before us now.

Thus, the Maryland capital gains tax was argued to be unconstitutionally arbitrary if construed to make Maryland tax liability depend upon exercise of the "reporting options" of Sec. 453. Rejecting this claim, the Maryland Court adopted the view of legislative purpose urged upon us by appellee here:

"It seems to us that the State has the better of this argument when it says that the Act uses as a base an individual taxpayer's adjusted gross income reported for federal income tax purposes, with certain additions and subtractions. The Act is not directed at payments received from installment sales before the date of its enactment. Neither does it purport to be a tax on capital gains as such or a tax on installment payments as such. It is rather a tax measured by the yardstick of income reported for federal tax purposes, whether capital gains be reflected in this figure or not." 282 A.2d 465, 472.

The federal adjusted gross income standard, the Court found,

" . . . is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return." *Id*. at 473.

---

8. In a lengthy and well-reasoned dissenting opinion in *Mitchell*, two Justices (Davis, J., joined by Schaefer, J.) would have over-ruled *Thorpe* on the ground that the *Thorpe* Court interpreted legislative intention in order to avoid the retroactivity problem.

In *Marco Associates* the Maryland Court affirmed the *Katzenberg* "yardstick" approach to measurement of taxable state income by upholding a deficiency assessment, under 1967 tax amendments, against a corporation which utilized Sec. 453 of the Code to recognize 1968 installment payments on its federal return, although the initial property sale had occurred in 1964.

In a more recent confrontation with the installment payment taxation problem, the Nebraska Supreme Court in Altsuler v. Peters, 190 Neb. 113, 206 N.W.2d 570 (1973), considered and approved the principles embodied in *Katzenberg* and *Marco Associates, Inc.*, thus upholding a regulation promulgated by the Nebraska Tax Commissioner which specifically brought Sec. 453 installment receipts within Nebraska income. The Nebraska Court's view of the problem is straightforward:

"The taxpayer, in a sense, realizes a gain on an appreciated asset when he sells it, even though he has contracted to take the proceeds over a period of time. Under the provisions of section 453, I. R.C.1954, if the requirements of that section are met, he may report the gain in installments. The statute and regulation give him the option of postponing the recognition of a portion of the gain. In effect, he has the option of treating the gain as completely realized at the time of sale, or he may postpone partially the tax consequences until he has actual realization by receiving the installment. It makes little difference whether we say the gain is realized but recognition is postponed, or say that there is no realization until receipt of the installment. In the absence of some contrary indication in the Nebraska Revenue Act of 1967 it appears to us, as we have already indicated, that the Legislature used the term realized, in the context we are now using it, primarily in the sense of received." 206 N.W.2d 570, 578.

Keeping in mind the principle that we must follow the intention of our own Legislature in evolving a decision here, we nonetheless consider that the broad principles enunciated by the Maryland and Nebraska Courts are helpful analytical guides to what may be the intended reach of the Maine Tax.

Returning as we must to the words of the Maine statute, we find no indications that the Legislature intended other than an objective "yardstick" approach to measurement of Maine income for taxing purposes. In truth, the Maine Act is ambiguous on the point. The effective date provision, Sec. F3, confines taxation to items of income or gain "earned, received, incurred, or accrued" on or after the effective date. These words have been variously interpreted depending upon the factual contexts in which they arise.

■ We conclude that, by adoption of federal adjusted gross income as the standard for "entire taxable income" of a Maine individual, the Legislature intended to resolve, *a priori,* semantic conflicts such as those suggested by the bare words of the statute. As evidence of this intent, the Legislature did not undertake creation of a unique or complicated income tax scheme. Nor did it provide the vast administrative machinery which would be necessary to supply the interpretive and investigative functions of the Internal Revenue Service. We think, as did the *Katzenberg* Court, that our Legislature sought to foreclose the necessity for determination of the "source, nature or composition of the funds." *Katzenberg,* supra, 282 A.2d 465, 473.

■ We are guided to this conclusion, in part, by the principle that where the meaning of a statute is unclear, or its words are obscure, we may consider the practical consequences of any particular interpretation which we may reach. Stetson v. Johnson, 159 Me. 37, 187 A.2d 740 (1963); Coffin v. Rich, 45 Me. 507, (1858), overruled on other grounds in Hawthorne v. Calef, 69 U.S. (2 Wall.) 10, 17 L.Ed. 776 (1864).

■ Were we to determine that the Legislature intended adoption of a procedure whereby gains on sales of capital assets must be measured, for state income tax purposes, by capital valuation on the tax statute's effective date, we would multiply several fold the complexity of the task of levying Maine income taxes. We are led to doubt that any interpretation different than that which we now make would be consistent with legislative design. We therefore conclude that the installment payments received by appellants in 1970 and 1971 are taxable in those years under the Maine Income Tax Law.

Consistent with this ruling, we reject appellants' theory that we are bound by federal interpretations respecting the precise time at which income is "realized" for taxing purposes. Appellants point out that utilization of the "tax-timing" provision of Sec. 453 merely defers federal income tax reporting of installment income from property sales, and does not postpone "realization" of the income, which in the *federal* context is viewed as occurring at the time of sale.[9] Under the Internal Revenue Code and federal case law, the concept of realization is most frequently employed to determine when a taxable event occurs, and hence, when taxation is permitted, or required. See e. g., Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920) ; MacLaughlin v. Alliance Ins. Co., 286 U.S. 244, 52 S.Ct. 538, 76 L.Ed. 1083 (1932). By appellants' reasoning, the focus on "realization" should preclude state taxation here, since realization occurred when the Westbrook residence was sold, before the Tax Act was in effect.

The reasoning is sound only when premised upon the technical definitions evolved in federal law.

We have already concluded the Legislature evidenced an unwillingness to plumb the depths of the federal income tax quagmire to fill in apparent gaps in the Maine law.

Whatever meaning "realization" may have in the federal context, the word was not employed in the Maine Act, and appellants' incantation of it does not amend the Legislature's clearly expressed intention to utilize federal adjusted gross income as the trigger for state taxation.[10]

Appellants also maintain that if the Maine Income Tax Act reaches the installment payments received in 1970 and 1971, as we have so held, then such taxation is unconstitutionally retroactive.

■ We agree that while tax laws are not necessarily violative of the Constitution merely because they are retroactive, Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938), the legislative power to enact retroactive tax laws is not unlimited. People ex rel. Beck v. Graves, 280 N.Y. 405, 21 N.E.2d 371 (1939) ; Cooper v. United States, 280 U.S. 409, 50 S.Ct. 164, 74 L.Ed.2d 516 (1930).

The fallacy of appellants' argument that this latter principle operates here is their assumption that application of our Tax Law to the installment payments, and our rejection of a capital asset valuation tied to the statute's effective date, automatically make the law retroactive.

■ Many authorities support the holding which we now reach, that the taxation

---

9. See Gladys G. Wilkinson et al. v. Commissioner of Internal Revenue, 49 T.C. 4, 11 (1967) ; Rev.Rul. 60–68 C.B. 1960–1, p. 151 ; Altsuler v. Peters, supra.

10. We are not convinced that 36 M.R.S.A. § 5102, subsec. 11, which states in pertinent part,
"*Meaning of terms.* Any '*term*' used in this part shall have the same meaning as when

used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required, . . . . "
compels us to explore and obey forthwith all interpretations of nomenclature in the federal statute as advanced by federal agencies or tribunals.

here is *not* retroactive, and is not, therefore, subject to an analysis aimed at measuring the constitutional boundaries of retroactivity.

The Court in *Katzenberg,* supra, found that application of the Maryland tax to installment payments was not retroactive, since the tax reached the profits actually received after the law's effective date, rather than the sales of assets which preceded enactment. This reasoning was affirmed in *Marco Associates, Inc.,* supra.

Citing *Katzenberg,* the New Hampshire Supreme Court similarly rejected a claim that the New Hampshire Business Profits Tax is unconstitutionally retroactive. Shangri-La, Inc. v. State, N.H., 309 A.2d 285 (1973). Although *Shangri-La* involved a sale of property after, rather than before the effective date of the statute, we find persuasive the Court's reasoning that the tax law

" . . . levies only on the realization of income in the year the taxpayer actually receives profit by converting assets. The majority, and we think better view, does not consider an income tax levied on the final receipt of profit as retroactive merely because the amount of gain or profit realized is measured with reference to a basis prior to enactment." 309 A.2d 285, 288.

In City National Bank of Clinton v. Iowa State Tax Commission, 251 Iowa 603, 102 N.W.2d 381 (1960), the Iowa Supreme Court weighed, and also rejected a challenge on retroactivity grounds to taxation in 1956, under an act effective in 1955, of capital gains upon stock computed with reference to the original basis of the stock when acquired in 1935. After reviewing

several federal and state decisions, including Norman v. Bradley, 173 Ga. 482, 160 S.E. 413 (1931) (cited with approval in MacLaughlin v. Alliance Ins. Co., supra), Fullerton Oil Co. v. Johnson, 2 Cal.2d 162, 39 P.2d 796 (1934), and Fidelity and Columbia Trust Co. v. Reeves, 287 Ky. 522, 154 S.W.2d 337 (1941), the Iowa Court concluded that

" . . . unrealized capital gains are not separate property, and that until the gain or profit is taken there is no taxable income . . . . (W)e feel obliged to follow the majority view, which is also the more recent, and therefore hold this method of taxing capital gain does not amount to a retroactive tax."[11] 102 N.W.2d 381, 386.

In 1969 appellants were faced with a decision whether to pay all of the federal tax on the capital gains resulting from the sale, or defer payment by taking advantage of the installment payment provision of the federal code.

Had they elected to pay the federal tax on the entire taxable profit in the year of sale, appellants would not be before us now. Choosing as they did, however, to receive and recognize in 1970 and 1971 installments attributable to the 1969 sale, they

" . . . thereby were left to fall under such provisions of the law as might be in force at their maturity. That the law might be changed, not only in the tax rate but in any other of its provisions, was a risk the taxpayer took in deferring the realization of his gains." Snell v. Commissioner of Internal Revenue, 97 F.2d 891, 893 (5th Cir. 1938)[12]

---

11. See also Kellems v. Brown, 163 Conn. 478, 313 A.2d 53 (1972), (appeal dismissed for want of federal question, 409 U.S. 1099, 93 S.Ct. 911, 34 L.Ed.2d 678 (1973)), wherein the Connecticut Court considered and rejected, *inter alia,* a claim that the Connecticut capital gains and dividends tax operates in an impermissibly retroactive manner.

12. Approving this language from *Snell,* the First Circuit Court recently observed in Picchione v. Commissioner of Internal Revenue, 440 F.2d 170 (1971), cert. den., 404 U.S. 828, 92 S.Ct. 66, 30 L.Ed.2d 57 (1971), that the aggrieved taxpayers before the Court enjoyed " . . . no constitutional right to have all income flowing from (sale of a copyright)

We find the Maine Income Tax Law wholly prospective in its operation here, and discern no infirmities in the Law as applied to the facts presented.

Appellants' appeal of the State Tax Assessor's ruling establishing deficiencies is therefore without merit.

The entry must be,

Judgment for the State Tax Assessor.

taxed under the revenue laws in effect at that time regardless of when the income is received. Tax liability is not a contract . . .. Nor has the government ever represented that future years would not bring changes in the tax laws. Such changes are as inevitable as taxation itself. When a taxpayer chooses to spread the realization of income from a transaction over a number of years . . . the government does not violate due process by taxing that income under the revenue laws in effect in the year in which it is received and reported." 440 F.2d 170, 173.