1999 ME 170

## FAIRCHILD SEMICONDUCTOR CORPORATION

v.

## STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued Sept. 10, 1999.
Decided Nov. 23, 1999.

James G. Good (orally), Jonathan A. Block, Pierce Atwood, Portland, for the plaintiff.

Clifford B. Olson (orally), Assistant Attorney General, Augusta, for the defendant.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Fairchild Semiconductor Corporation appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) affirming a decision of the State Tax Assessor assessing additional taxes against Fairchild for the 1988 tax year. Fairchild argues that the Assessor misapplied 36 M.R.S.A. § 5102(8)[1] in its audit of Fairchild and its "unitary group," resulting in the erroneous denial of a Maine net operating loss (NOL) carryback deduction from the 1989 tax year to the 1988 tax year.[2] Fairchild also contends that, because the Assessor's denial of the deduction was based on the lack of a federal NOL deduction for the same year on the federal consolidated return filed by Fairchild and 14 other corporations, it violates both the due process and commerce clauses of the United States Constitution. Because we agree that the Assessor mis-applied section 5102(8) of the Maine Tax Code, we vacate the judgment of the Superior Court and do not reach the constitutional issues.

I.

[¶ 2] Fairchild is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Santa Clara, California. Fairchild was acquired by its parent corporation, National Semiconductor Corporation, on October 1, 1987. In tax years 1988, 1989 and 1990, Fairchild, with three other corporations, was engaged in a "unitary business"[3] in Maine. Accordingly, in each of those years, the group filed a Maine income tax return as a "unitary group." During the same period, Fairchild filed a consolidated federal tax return with roughly 14 other corporations (the "consolidated group") that included Fairchild's Maine unitary group as well as corporations that were not members of the unitary group.[4]

1. Title 36, section 5102(8) at the time in question defined "Maine net income" as follows:

   "Maine net income" means, for any taxable year for any corporate taxpayer, the taxable income of that taxpayer for that taxable year under the laws of the United States as modified by section 5200–A and apportionable to this State under chapter 821 [36 M.R.S.A. §§ 5210–11]. To the extent that it derives from a unitary business carried on by 2 or more members of an affiliated group, the Maine net income of a corporation shall be determined by apportioning that part of the federal taxable income of the entire group which derives from the unitary business, except income of an 80–20 corporation.

   36 M.R.S.A. § 5102(8) (1990), *amended by* P.L.1991, ch. 546, § 32, P.L.1995, ch. 281, § 25 and P.L.1997, ch. 24, § C–9 [hereinafter all citations to 36 M.R.S.A. § 5102(8) will be to the 1990 version unless otherwise noted].

2. As indicated, Maine adopts "taxable income ... under the laws of the United States," 36 M.R.S.A. § 5102(8), as its definition of "Maine net income." Section 63 of the Internal Revenue Code provides in relevant part, " 'taxable income' means gross income minus the deductions allowed by this chapter." 26 U.S.C.A. § 63(a) (1988). The relevant deduc-

tion "allowed by this chapter" in this case is the deduction allowed pursuant to section 172 of the Code for net operating losses. Section 172 defines "net operating loss" as "the excess of the deductions allowed by this chapter over gross income." 26 U.S.C.A. § 172(c) (1988). In other words, if, after all allowable deductions are taken in a given tax year, a taxpayer ends up with a negative number, that figure is a "net operating loss" that can be carried over or back to other tax years and used as a deduction in those other tax years pursuant to section 172 of the Internal Revenue Code.

3. If a group of corporations meets the definition of a "unitary business," i.e., they engage in "business activity which is characterized by unity of ownership, functional integration, centralization of management and economies of scale," 36 M.R.S.A. § 5102(10–A) (1990), they are taxed as a single business pursuant to Maine law. 36 M.R.S.A. § 5200 (1990).

4. Corporations meeting the definition of an "affiliated group," 26 U.S.C.A. § 1504 (1988), may file a consolidated federal tax return and be treated as one entity for tax purposes. 26 U.S.C.A. § 1501 (1988). The result is that the income of one affiliate may be offset by the

[¶ 3] In the 1988 tax year, after adjustments that are not at issue in this case, Fairchild's unitary group had positive income totalling approximately $21 million. The following year, the unitary group sustained losses totalling approximately $115 million. Because the unitary group filed a consolidated return at the federal level, however, these losses were more than offset by the income of the other members of the consolidated group. As a result, no NOL carry-back deduction was available to the consolidated group at the federal level. However, if the members of the unitary group had calculated their taxable income separately at the federal level, the loss incurred in the 1989 tax year would have been available to the unitary group corporations as an NOL carry-back deduction in the 1988 tax year pursuant to 26 U.S.C.A. §§ 63(a) & 172(c) (1988).

[¶ 4] After conducting a field audit that began in 1991, the State Tax Assessor issued a notice of assessment to Fairchild in which $147,850 in tax, interest and penalties was assessed against the corporation for the 1988, 1989 and 1990 tax years. Fairchild thereafter filed a timely petition for reconsideration pursuant to 36 M.R.S.A. § 151 (1991), *amended by* P.L. 1993, ch. 395, § 2 and P.L.1997, ch. 668, § 11, challenging several aspects of the Assessor's determination that are not relevant to this appeal. Following a reconsideration conference, the Assessor modified its assessment to $51,618. However, in the course of its reconsideration, the Assessor disallowed a NOL carry-back deduction in the 1988 tax year for the loss sustained by the unitary group in the 1989 tax year that the Assessor had initially allowed during its field audit. The Assessor based its disallowance on the lack of a NOL carry-back deduction for the consolidated group at the federal level in the 1988 tax year because, unlike the unitary group, the consolidated group did not sustain a loss in the 1989 tax year.

[¶ 5] Fairchild filed a timely petition for judicial review pursuant to 36 M.R.S.A. § 151 (1996), *amended by* P.L.1997, ch. 668, § 11; 5 M.R.S.A. § 11002 (1989); and M.R. Civ. P. 80C, challenging the Assessor's disallowance of the 1989 NOL carry-back deduction. The Superior Court affirmed and Fairchild filed this appeal.

## II.

[¶ 6] It is an issue of first impression for this Court: whether a NOL carry-back deduction is available to a Maine unitary group for Maine losses when determining "Maine net income" pursuant to 36 M.R.S.A. § 5102(8) despite one not being available at the federal level due to the composition of the group filing a consolidated federal return. Section 5102(8) defines Maine net income for any corporate taxpayer as:

> the taxable income of that taxpayer ... under the laws of the United States ... [and][t]o the extent that it derives from a unitary business ... [it] shall be determined by apportioning that part of the federal taxable income of the [unitary] group which derives from the unitary business ....

36 M.R.S.A. § 5102(8) (1990). The issue is as simple as this: Does the above language require a reference to the taxpayer's federal tax return or a reference to federal tax law? The Assessor argues that the statute requires a reference to the federal tax return, Fairchild to federal law.

[¶ 7] As a preliminary matter, we note that the Superior Court serves as the "forum of origin for a determination of both facts and law" when reviewing decisions of the Assessor pursuant to 36 M.R.S.A. § 151. *Enerquin Air, Inc. v. State Tax Assessor,* 670 A.2d 926, 928 (Me. 1996). We review the Superior Court's determinations of law directly, *see Koch Refining Co. v. State Tax Assessor,* 1999 ME 35, ¶ 4, 724 A.2d 1251, 1252, and conduct a de novo review. *See Peterson v.*

losses of another affiliate, thereby reducing      the overall tax burden of the affiliated group.

*State Tax Assessor,* 1999 ME 23, ¶ 6, 724 A.2d 610, 612. When construing a statute, "we look to the plain meaning of the language to give effect to the legislative intent." *Koch,* 1999 ME 35, ¶ 4, 724 A.2d 1251, 1252–53. Additionally, we consider the statutory scheme as a whole in order to reach a harmonious result. *See id.* (quoting *Estate of Whittier,* 681 A.2d 1, 2 (Me.1996)). Lastly, "[w]e avoid statutory constructions that create absurd, illogical, or inconsistent results." *Darling's v. Ford Motor Co.,* 1998 ME 232, ¶ 5, 719 A.2d 111, 114.

[¶ 8] The State Tax Code for the tax year in question defined "Maine net income" for corporate taxpayers as the taxable income of that taxpayer pursuant to the United States Internal Revenue Code. 36 M.R.S.A. § 5102(8) (1990). The Internal Revenue Code in turn defined "taxable income" as gross income minus the deductions allowed pursuant to the Code. 26 U.S.C.A. § 63(a) (1988). The deduction at issue in this case for net operating losses was allowed by section 172 of the Code. 26 U.S.C.A. § 172 (1988). We are asked to determine whether the Legislature intended that the income of the Maine unitary group is to be determined by calculating the income of the group separately pursuant to section 63 of the Code, or whether the Legislature intended to merely adopt the treatment of the unitary group's income as reflected on the federal consolidated return filed by the 15 affiliated corporations.

[¶ 9] The plain language of the statute appears clear on this point when section 5102(8) is read in its entirety. We find reflected in that language an intent to determine the Maine "net income" of a unitary group separately pursuant to section 63 of the Internal Revenue Code, as opposed to simply adopting the treatment of the unitary group's income at the feder-

al level which may be the result of the group's membership in a federal consolidated group.

[¶ 10] In order to determine the portion of a unitary group's income that is properly taxable by Maine when the group has non-Maine source income, the Maine Tax Code requires that the apportionment formula be applied to the federal taxable income of the entire unitary group as a single entity. 36 M.R.S.A. §§ 5102, 5211 (1990); *see also Tambrands, Inc. v. State Tax Assessor,* 595 A.2d 1039 (Me.1991). Specifically, the second sentence of section 5102(8) directs that the "federal taxable income of the entire group" be apportioned, using the apportionment formula, in order to determine the "Maine net income" of the unitary group. 36 M.R.S.A. § 5102(8). Both Fairchild and the Assessor agree that "the entire group" referred to above is the unitary group, and no other. In other words, the group is to be treated as a unit without regard to the status of its member corporations at the federal level, i.e., whether they filed individually, or as members of a consolidated group.

[¶ 11] Because the criteria for membership in a Maine unitary group differs from that for membership in a federal consolidated group, there is no identity relationship necessarily existing between the two groups.[5] *Compare* 26 U.S.C.A. § 1504 (1988), *with* 36 M.R.S.A. § 5102(1–B) & (10–A) (1990). As a result, membership in a Maine unitary group does not necessarily entail membership in a consolidated group at the federal level that includes all the corporations in the unitary group. Therefore, an effective determination of the income of the unitary group appears to *require* a separate determination of federal taxable income pursuant to section 63, especially when the unitary

---

5. In order for corporations to file as a unitary group in Maine, the tax code requires 50% common ownership and a unitary business relationship. 36 M.R.S.A. § 5102(1–B) & (10–A) (1990). However, in order for corpo-

rations to file a consolidated return at the federal level, the corporations need not possess a unitary business relationship, but must have 80% common ownership. 26 U.S.C.A. § 1504(a)(2) (1988).

group consists of corporations that are not all members of the same federal consolidated group. For this reason, we believe that the Legislature intended the income of a Maine unitary group to be determined separately pursuant to section 63 of the Code without regard to the group's affiliations at the federal level. In other words, the unitary group is to be treated independently and section 63 is to be applied to it for a calculation separate from that performed for the consolidated group at the federal level.

[¶ 12] Furthermore, as stated above, we seek to construe statutes so as to avoid inconsistent results. *See Darling's,* 1998 ME 232, ¶ 5, 719 A.2d 111, 114. The purpose of allowing NOL deductions is to afford corporations the benefit of income averaging which recognizes the vagaries of doing business. *See B.F. Goodrich Co. v. Dubno,* 196 Conn. 1, 490 A.2d 991, 995 (1985); *Production Credit Ass'ns of Lansing v. State Dep't of Treasury,* 404 Mich. 301, 273 N.W.2d 10, 16 (1978). "Such deductions counteract the inequity that may result from breaking up taxable activity into relatively short periods of time and taxing a discrete income producing period without regard to a preceding period of loss." *B.F. Goodrich Co.,* 490 A.2d at 995. The Assessor's approach would deny Fairchild's unitary group this benefit, while another unitary group with the same income record, but which was not part of a federal consolidated group, would realize the benefit for Maine state tax purposes. We do not think that the Legislature intended such an inconsistent result.

[¶ 13] The Assessor relies on our holdings in three separate cases in arguing that events at the federal level determine a taxpayer's treatment in Maine. The Assessor places particular emphasis on our holding in *Green v. State Tax Assessor,* 562 A.2d 1217 (Me.1989), which involved individual nonresident taxpayers who had overall positive income in the tax year in question despite experiencing losses in Maine. We held that the taxpayers could not carry back their Maine losses to other years on their state returns because they did not have excess loss deductions on their federal *returns* in those other years. *Id.* at 1219–20. However, the statute in question, that involves the determination of "Maine adjusted gross income" for nonresident taxpayers, involves a very different process from that used to determine the Maine net income of a unitary group of corporations. *See* 36 M.R.S.A. §§ 5102(1–C)(B), 5142 (1989).

[¶ 14] The process of determining Maine adjusted gross income pursuant to section 5142 involves working backward from the taxpayer's federal *return* and determining what portion of the *components* reflected in the federal adjusted gross income shown on that return are attributable to Maine. *See id.* ("The adjusted gross income of a nonresident derived from sources within this State shall be the sum of the following: A. The net amount of items of income, gain, loss, and deduction entering into his federal adjusted gross income which are derived from or connected with sources in this State."); *Green,* 562 A.2d at 1219. In contrast, section 5102(8) makes no reference to the actual components of a unitary group's income as reflected on a federal return because, as discussed above, the unitary group does not necessarily file a federal return as a distinct and discrete group, rather, it may be filing with other corporations, or the members of the unitary group may be filing individual returns. The determination of Maine taxable income pursuant to section 5142 is not analogous to the determination of Maine net income pursuant to section 5102(8), therefore, the treatment of the Greens for Maine state tax purposes is not analogous to the treatment of a unitary group for Maine state tax purposes.

[¶ 15] In *Albany Int'l Corp. v. Halperin,* 388 A.2d 902 (Me.1978), also cited by the Assessor, the *individual* corporation in that case had *already* calculated its income pursuant to section 63 on the federal level.

*Id.* at 906. In doing so, it treated taxes it had paid to foreign governments as a tax credit. *Id.* For Maine state tax purposes, it sought to ·*recalculate* its income pursuant to section 63 and take a deduction instead of a credit for those taxes it had paid to foreign governments. *See id.* We held that the corporation could not calculate its federal taxable income pursuant to section 63 twice, making inconsistent elections each time. *See id.* In contrast, Fairchild's unitary group is not trying to reconfigure or recalculate its income. Rather, the group merely seeks treatment as a separate entity pursuant to section 63 of the Internal Revenue Code that would result in a deduction for losses it undeniably incurred and to which it would clearly be entitled without regard to the income of *other* corporations with which it is affiliated at the federal level.

[¶ 16] Lastly, the Assessor cites *Tiedemann v. Johnson,* 316 A.2d 359 (Me.1974). That case dealt with individuals who had chosen to receive and report income from the sale of their house over a period of years in installments in order to realize certain tax advantages at the federal level. *Id.* at 361. We did not allow them to reconfigure or recalculate their income for Maine tax purposes and treat the income from the sale of their house as if they had received it in the year of the sale that was prior to the Maine Tax Code taking effect. *See id.* at 366–67. Again, Fairchild does not seek to manipulate its income or losses in a way that would change its treatment pursuant to the Internal Revenue Code. It merely seeks separate treatment for its unitary group the one and only time the federal taxable income of the group is calculated pursuant to section 63 of the Internal Revenue Code.

[¶ 17] Other states have adopted disparate approaches in interpreting their respective statutes. *Compare, e.g., Kerr-McGee Refining Corp. v. Director of Revenue,* No. 93–00071RI, 6 (Mo. Admin. Hrg. Comm'n Mar. 29, 1994) (Missouri Hearing Commission interpreting statute explicitly stating "federal taxable income" should be determined "as if a separate federal income tax return had been filed by [the corporation]," held that corporate taxpayer should pay same amount of taxes it would have paid had it filed separate returns in all years, not just the tax year in question), *with Postal Finance Co. v. Oklahoma Tax Comm'n,* 594 P.2d 1205, 1206 (Okla.1977) (court interpreting statute that defined Oklahoma taxable income as "taxable income as reported ... to the federal government," held that no NOL deduction was available if none was available on the federal level for the same tax year); *see also McJunkin Corp. v. West Virginia Dep't of Tax and Revenue,* 193 W.Va. 446, 457 S.E.2d 123, 127 (1995) (holding that prior to amendment of state tax code, NOL deduction not available unless one available on federal level, subsequent to amendment, availability of state NOL deductions not dependent on simultaneous federal NOL). In every case, the language of the above statutes differs from that of Maine's. Therefore, we will not look beyond the plain language of section 5102(8) to determine the intent manifested by the Legislature in the words of section 5102(8).

[¶ 18] Because we believe the statutory language clearly reflects a legislative intent that for Maine income tax purposes the income of a unitary group of corporations is to be calculated pursuant to the Internal Revenue Code without regard to their filing consolidated returns at the federal level with other corporations, we vacate the judgment of the Superior Court.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the State Tax Assessor for a redetermination, consistent with the opinion herein, of the taxes payable by Fairchild and· its unitary group for the 1988 tax year.