## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* WRIGHT, COMPTROLLER GENERAL OF THE STATE OF GEORGIA.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 30.   Reargued October 13, 14, 1919.—Decided October 27, 1919.

The provisions in the charters granted in 1845 to the Southwestern and Muscogee Railroads limiting their tax liabilities to a certain per cent. of net income are to be construed like similar provisions in the earlier charters of the Augusta & Waynesboro (1838) *et al.* (*Cf. s. c.*, 248 U. S. 525; *Wright* v. *Central of Georgia Ry. Co.*, 236 U. S. 674) as extending to a lessee; there being no ground to hold that the policy of the legislature had changed in the interim, although provisions in the earlier charters affording express evidence that it contemplated the income derived from letting as well as that from using and sharing the railroads are absent from the later charters. P. 523.

The policy remained the same when express power to let was given in 1852.   P. 524.

Merger of the Muscogee with the Southwestern under an act of 1856 did not affect the tax exemption.   *Id.*

The court finds nothing in the later statutes or constitutions of Georgia that attempts to supplant or impair the tax limitations in the charters of the Southwestern and Muscogee Railroads.   *Id.*

146 Georgia, 406, reversed.

IN this case a rehearing was granted "in so far as the validity of the tax in question is involved in or depends upon the charters of the Southwestern and the Muscogee Railroad and the subsequent relevant legislation." As to all other questions, leave to file the application for rehearing was denied. 249 U. S. 590.

The judicial history of the charter tax exemptions is to be found in the following cases: *Central R. R. & Banking Co.* v. *Macon* (1871), 43 Georgia, 605; *Central R. R. & Banking Co.* v. *State* (1874), 54 Georgia, 401; *Southwestern R. R. Co.* v. *State* (1874), 54 Georgia, 401; *Central R. R. & Banking Co.* v. *Georgia* (1875), 92 U. S. 665; *Southwestern R. R. Co.* v. *Georgia* (1875), 92 U. S. 676; *Wright* v. *Southwestern R. R. Co.*, 64 Georgia, 783; *Southwestern R. R. Co.* v. *Wright* (1886), 116 U. S. 231; *Central R. R. & Banking Co.* v. *Wright* (1896), 164 U. S. 327; *Wright* v. *Central of Georgia Ry. Co.* (1915), 236 U. S. 674; *Central of Georgia Ry. Co.* v. *Wright* (1919), 248 U. S. 525.

*Mr. T. M. Cunningham, Jr.,* and *Mr. A. R. Lawton* for plaintiff in error.

*Mr. Warren Grice* for defendant in error:

The original charters of the Southwestern and Muscogee Railroads, unlike the charter of the Georgia R. R. & Banking Company, construed by this court in 236 U. S. 687, and that of the Augusta and Waynesboro (afterwards Augusta and Savannah), construed in the previous decision of this case, 248 U. S. 525, contain no reference to a renting, lease or other disposition of the railroads beyond operation by the grantee corporations. The tax immunity was purely personal. It can not be said of either charter that it "contemplated" or "permitted" any extension of the tax contract to another. They fall, therefore, within the general rule confining the immunity to the immediate grantee in the absence of express words to the contrary,

and this distinction was fully recognized in *Morris Canal Co.* v. *Baird*, 239 U. S. 132, and *Rochester Ry. Co.* v. *Rochester*, 205 U. S. 247.

The Act of January 22, 1852, Laws 1851–1852, p. 119, authorized the Central R. R. & Banking Company to lease certain connecting railroads, namely the Augusta and Savannah and the Southwestern, and authorized them to lease to the Central, for a term of years or during their respective charters. This act did not include the Muscogee, which never connected with the Central. The Act of 1856, Laws 1856, p. 187, provided for the consolidation of the Muscogee and the Southwestern companies under the charter of the latter. Neither of these acts referred to taxation or to immunity from taxation. The bare privilege to lease given was not acted on till June, 1869. If the Act of 1852 had attempted to extend the exemption to the lessee, it would be of importance to consider that in the meanwhile the Georgia Code of 1863 had gone into effect which made sweeping changes in the status of corporations (see *Atlantic & Gulf R. R. Co.* v. *Georgia*, 98 U. S. 359), and the Constitution of 1868 had been adopted, making uniform *ad valorem* taxation the system of the State; and the question would have been whether the Act of 1852, which was a mere offer on the part of the State until acted on, should not be considered as modified by all the subsequent legislation affecting the subject of taxation. That there was no contract till acceptance in 1869, see *Southwestern R. R. Co.* v. *State*, 54 Georgia, 402; *Buffalo Railroad Co.* v. *Falconer*, 103 U. S. 821. And that all the then body of laws was part of the contract, see *Great Northern Ry. Co.* v. *Minnesota*, 216 U. S. 206, and cases cited.

But the whole question is removed by noting that the Act of 1852 makes no attempt to extend any immunity to the lessee. And an immunity from taxing power never arises from silence or by implication, but only from express terms that admit of no other reasonable construction.

*Yazoo & Mississippi Valley R. R. Co.* v. *Adams,* 180 U. S. 1, 22; *Phœnix Insurance Co.* v. *Tennessee,* 161 U. S. 174; *Bank of Commerce* v. *Tennessee,* 161 U. S. 134, 146; *Southwestern R. R. Co.* v. *Wright,* 116 U. S. 231.

While the interest remaining in the lessor was still protected by the personal contract against taxation higher than one-half per cent. on its net annual income, to wit, the reserved rental on the road; the interest acquired by the lessee remained, under the general law, liable to be taxed as the property of the lessee. It is true that in 1869 there existed no law for the separate taxation of the leasehold interest in property, unless the provisions of the Constitution of 1868 and the Code in requiring all property to be taxed uniformly *ad valorem,* implied it. But that fact did not fetter the legislature, or prevent the passage of laws for its taxation. *Jetton* v. *University of the South,* 208 U. S. 500.

But the present plaintiff was organized in 1895 under the general railroad incorporation law of 1892, Code 1911, § 872 *et seq.,* by those who purchased the property of the Central R. R. & Banking Company, including the lease of the Southwestern Railroad, at foreclosure, and took the new lease, here in controversy, of the Southwestern and Muscogee Railroads, made by the Southwestern Company, in substitution for the old one. By the express terms of its charter it took its existence and its right to run these railroads "subject to Article 4 of the Constitution of the State, and all the laws governing railroad companies at the date hereof or that may hereafter come of force," etc. That article established uniform *ad valorem* taxation of all property, and forbade special immunities and exemptions. The laws then in existence separately taxed all "interests less than the fee" to the owners. This new charter is as much a contract as any other, and the agreements in it in favor of the State are as much to be enforced and respected as those in favor of the corporation. Having thus agreed

to pay taxes according to the constitution and laws, and been allowed existence on that express condition, the corporation would be estopped to assert an exemption if it had acquired one. It would be waived.

The statute under which the charter was granted, being by an elementary principle part of the charter, also in express terms excepted "any exemption from taxation, either State, County or Municipal," doubly emphasizing the State's insistence that no corporation formed under it should exercise any such immunity. *Rochester Ry. Co. v. Rochester,* 205 U. S. 254, 255; *Great Northern Ry. Co. v. Minnesota,* 216 U. S. 229.

The provision in question is not in the nature of a commuted tax on property. But if it were, the general principle confining the exemption to the grantee would be applicable. *Stearns v. Minnesota,* 179 U. S. 255; *Southwestern R. R. Co. v. Wright,* 116 U. S. 231.

The right to lease was not an original right of the Southwestern and Muscogee Companies. It seems never to have been given the Muscogee Company, since it was not named or described in the Act of 1852. No extension of the exemption of the lessor to the lessee as to its interest acquired by the lease is to be implied from the mere permission to lease. *Jetton v. University of the South,* 208 U. S. 501.

Taxing the lessee separately on its interest can not result in double taxation.

Confusion of earnings waived the exemption. *Railroad Co. v. Maine,* 96 U. S. 499.

MR. JUSTICE HOLMES delivered the opinion of the court.

In this case it was decided at the last term that the plaintiff in error, the railway company, was exempt from liability to taxation as lessee of certain roads, 248 U. S. 525, as it had been decided a few terms earlier that it was exempt from taxation upon the fee of the same roads.

236 U. S. 674. A rehearing was granted on the question whether the exemption thus adjudged to exist extends to portions of the plaintiff in error's road let to it by the Southwestern Railroad and the Muscogee Railroad, which were assumed to be embraced in the decision but were not specially discussed. The consideration of the court was directed especially to the charter of the Augusta and Waynesboro Rail Road granted in 1838 and having features characteristic of the conception of railroads then entertained. 236 U. S. 678, 679. It is argued that the charters of the other lessors just named, granted at a later date, even when limiting the corporation's liability to taxation in similar words, should be construed in a different way.

The charters of the Southwestern and the Muscogee Railroads were not granted until 1845, and while like the earlier ones they provided that the said railway and its appurtenances and all property therewith connected, or the capital stock of the said Rail Road Company, should not be subject to be taxed higher than one-half of one per cent. upon its annual net income, they did not contain the provisions that showed the legislature in 1838 to contemplate indifferently a revenue derived from using, from sharing, or from letting the special privileges granted—provisions that were of weight in the decision of the court.

But we are satisfied that between 1838 and 1845 there had been no such change in the policy of Georgia as to require the same words to be given a different meaning at the later date from that which we have decided that they had at the former. Circumstances had not changed when express power to let was given in 1852. The Muscogee was merged in the Southwestern under an act of 1856, but the exemption remained superior to legislative change. *Southwestern R. R. Co.* v. *Georgia,* 92 U. S. 676. As remarked by Chief Justice Waite in a like suit between the same parties, the language of the exempting clause is somewhat unusual, and means the railroad specified in the

charter and none other. *Southwestern R. R. Co.* v. *Wright,* 116 U. S. 231. But conversely it means that that road shall be exempt while owned by this corporation whether used or demised.

We see nothing in the later statutes or constitutions that attempts to substitute a new contract or to impair the obligation of the one originally made. Different opinions were entertained on the main question which this rehearing does not reopen; but taking that as settled we cannot believe that any real distinction can be made between the charter of the Augusta and Waynesboro and those of the Southwestern and Muscogee roads.

The decree of last term must stand and that of the state court must be reversed.

*Decree reversed.*

MR. JUSTICE McKENNA, MR. JUSTICE PITNEY, MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE dissent.