

# THE ATTORNEY GENERAL

## OF TEXAS

GROVER SELLERS
~~WILLIAM WILSON~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Re:  Opinion No. 0-6828
The date of "cessation of
hostilities" as referred to
in Sec. 1, S.B. No. 130, Acts
of 48th Legislature

We have your request for an opinion as to "the date of
the cessation of hostilities as referred to in Section 1 of
Senate Bill 130, Acts of the Regular Session of the Forty-
eighth Legislature."

Many wartime statutes, both state and federal, contain
provisions for termination upon "cessation of hostilities,"
"termination of the emergency," "termination of the war," etc.
(See "Report to the President by the Attorney General concern-
ing the Limitation, Suspension, or Termination of Emergency,
National Defense and War Legislation," dated September 1, 1945.)
Each statute must be construed in the light of its particular
wording and purpose and in the light of the factual conditions
prevailing at the time the question is raised.

Senate Bill 130 releases interest and penalties on cer-
tain ad valorem taxes,

". . . providing that the release of such interest
and penalties shall extend for the duration of World War
II, and providing that the respective members of such
Armed Forces . . . shall be allowed a period of not to
exceed six (6) months after the cessation of hostilities
in which to pay without penalty and interest their taxes
which have accrued and which shall accrue during the
duration of the war."   (Underscoring ours)

It is apparent from the above quoted language that the
phrases "the cessation of hostilities," "the duration of World
War II," and "the duration of the war" are inter-related and
must necessarily refer to the same time. Conceivably, actual
fighting might cease more than six months prior to the formal
termination of the war. Obviously, the Legislature did not
intend that the six-months' period of grace should terminate

prior to the acrual of the taxes. The intent of the Act is that taxes which accrue against persons entitled to the benefit of the Act prior to the termination of the war, if paid within six months thereafter, are interest-free and penalty-free.

Furthermore, Section 3 of the Act states, "The fact that many persons affected by the provisions of this Act are in distant countries in the service of their county and may unavoidably permit their taxes to become delinquent" creates an emergency. This clause shows that the Legislature intended to provide relief for persons who might unavoidably delay payment of taxes until termination of their service in the Armed Forces and subsequent return to their homes. It is reasonable to assume, therefore, that the Legislature, in fixing the time allowed such persons for payment of taxes without penalty and interest, considered the Federal laws fixing the period of military service.

Prior to enactment of the Act in question, the 77th Congress of the United States had, by Public Law 338 extended the period of service of members of the Army of the United States, and suspended restrictions on their territorial use, "during the existence of any war in which the United States is engaged, and during the six months immediately following the termination of any such war," 55 Stat. 799; and by Public Law 360, authorized the President to extend the period of service of inductees assigned to the Navy, Marine Corps or Coast Guard, provided that the ". . . period of service . . . shall be terminated not later than six months after the termination of the war," 55 Stat. 844.

It is our opinion, therefore, that "the cessation of hostilities" as used in Senate Bill 130 means the legal termination of World War II, rather than the actual cessation of fighting on the fields of battle.

Upon what date did, or will, World War II terminate, in the legal sense?

It is the province of the political department, and not of the judicial department, of the federal government to determine when war is at an end. The Protector, 12 Wall. (U.S.) 700, 20 L. ed. 463; Perkins v. Rogers, 35 Ind. 124, 9 Am. Rep. 639; Kneeland-Bigelow Co. v. Michigan Cent. R.R. Co., 207 Mich. 546, 174 N.W. 605; 67 Corpus Juris. 429.

The War of 1860-66 did not terminate upon surrender of the last Confederate general (May 26,1865) but continued until the proclamation of the President (August 20, 1866). United

States v. Anderson, 9 Wall. (U.S.) 56; The Protector, supra; McElrath v. United States, 102 U.S. 426.

The War with Spain did not end when actual hostilities were suspended by the protocol of August 12, 1898, but continued until the ratification of the treaty of peace in April, 1899. Hijo v. United States, 194 U.S. 315, 48 L. ed. 994, 24 S. Ct. 727.

World War I did not terminate when the actual fighting ceased and the Armistice was signed (November 11, 1918). Hamilton v. Kentucky Distilleries & W. Co., 251 U.S. 146, 64 L. ed. 194, 40 S. Ct. 106; Kahn v. Anderson, 255 U.S. 1, 65 L. ed. 469; In re Miller, 281 F. 764 (CCA, 2nd Circ.); Zimmerman v. Hicks, 7 F (2d) 443 (CCA, 2nd Circ.); Kneeland-Bigelow Co. v. Michigan Cent. R.R. Co., supra; Palmer v. Pokorny, 186 N.W. 505 (Mich. Sup. Ct.); State v. Dixon, 213 P. 227 (Mont. Sup. Ct.); Industrial Comm. of Ohio v. Rotar, 179 N.E. 135 (Ohio Sup. Ct.); contra: United States v. Hicks, 256 F. 707 (Dist. Ct.).

Most cases in which the point is directly involved hold that World War 1 terminated by the joint resolution of Congress of July 2, 1921. Clemens v. Perry, 51 S.W. (2d) 267 (Tex. Comm. App.); In re Miller, supra; Zimmerman v. Hicks, supra; State v. Dixon, supra; Industrial Comm. of Ohio v. Rotar, supra; see Swiss Nat, Ins. Co. v. Miller, 267 U.S. 42, 69 L. ed. 504. But some cases have held that it continued until the ratification of the treaty of peace. First Nat. Bank v. Anglo-Oeslerreichische Bank, 37 F. (2d) 564 (CCA, 3d Circ.); Palmer v. Pokorny, 186 N.W. 505 (Mich. Sup. Ct.). And other decisions have indicated, by dicta, that a war is not concluded until the treaty of peace is made and becomes effective. See United States v. Anderson, supra; Hamilton v. Kentucky Distilleries & W. Co., supra; Commercial Cable Co. v. Burleson, 255 F. 99 (Dist. Ct.); Siplyak v. Davis, 119 Atl. 745 (Pa. Sup. Ct.).

The 77th Congress of the United States, by joint resolutions, formally declared a state of war between the United States and certain foreign governments. Public Laws 328 (Japan), 331 (Germany), 332 (Italy), 563 (Bulgaria), 564 (Hungary), and 565 (Rumania). To date, neither Congress nor the President has formally declared a termination of these wars.

It is our opinion, therefore, that World War II has not yet terminated, and will not terminate, in the legal sense, and in the sense that the words "cessation of hostilities" are used in Senate Bill 130, until the Congress of the United States, or the President by authority from Congress, formally proclaims that it is terminated.

We have heretofore forwarded to you copies of our Opinions Nos. 0-5566, 0-6258, and 0-6565, which we believe answer the other questions asked in your letter.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By s/Raymond A. Lynch,
Raymond A. Lynch,
Assistant.

RAL/rt/wc

APPROVED OCT 19 1945
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman