STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-99-89

DONALD J. WILLIAMS,

Petitioner

v.

STATE TAX ASSESSOR,

Respondent

ORDER ON SUMMARY JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

JUL 18 2002

This matter is before the court on the State Tax Assessor's Motion for Summary Judgment on petition for review of final agency action filed pursuant to M.R. Civ. P. 80C. For the reasons explained below, the motion for summary judgment is granted.

I.    Facts and Procedural History

Petitioner Donald Williams (Williams) has brought an 80C appeal seeking judicial review of a decision by the State Tax Assessor (Assessor) to issue him a supplemental assessment for tax year 1988 pursuant to M.R.S.A. § 141 (1990 & Supp. 2001). This is the second assessment regarding Williams income tax liability for 1988. In July, 1995, Williams was assessed a tax of $102,275, plus interest and penalties, for income derived from the sale of a concrete plant in Leeds, Maine in 1988.[1] Williams appealed the assessment to this court [hereinafter Williams I], based largely upon the issue of his 1988 state residency, and a trial was commenced in August, 2000. On the third day of trial, the parties settled and a settlement agreement and consent judgment were drafted and signed.

---

[1] The record indicates Williams filed his 1988 individual Federal 1040 return in January 1993 and his 1988 Maine 1040 in May, 1996.

While Williams I was pending, the Assessor reviewed Williams' capital gain income for 1988 and found he underreported $556,800 by improperly claiming contingent liabilities totalling that amount. In May, 1998, Williams was issued a second assessment for 1988 adding up to $129,205 in tax, interest and penalties. Following a reconsideration upholding the assessment, Williams has petitioned this court for review. In his petition, Williams alleges six separate counts in which the second assessment was erroneous. This court will address each of these counts individually as the Assessor has moved for summary judgment on all of the allegations set forth in the petition.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Saucier v. State Tax Assessor*, 2000 ME 8, ¶ 4, 745 A.2d 972, 974. "A genuine issue of material fact is present only when 'there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial.' " *Francis v. Stinson*, 2000 ME 173, ¶ 37, 760 A.2d 209, 217 (quoting *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 171-72).

The Superior Court serves as the forum of origin for a determination of both facts and law when reviewing decisions of the State Tax Assessor. 36 M.R.S.A. § 151 (1990 & Supp. 2001). On review of a decision of the Assessor, this court "shall conduct a de novo hearing and make a de novo determination of the merits of the case. It shall make its own determination as to all questions of fact or law." Id. "The burden of proving that a transaction was not taxable shall be upon the person charged with tax

2

liability." 36 M.R.S.A. § 1763 (1990); *see also* 36 M.R.S.A. § 151 ("The burden of proof is on the taxpayer."). "The well settled principle that taxation is the rule and tax exemption is the exception places the burden on the [taxpayer] to bring its request unmistakably within the spirit and intent of the claimed exemption." *SST & S, Inc. v. State Tax Assessor*, 675 A.2d 518, 521 (Me. 1996).

## B. Authority of State Tax Assessor

As a threshold matter, the petitioner questions the validity of the Assessor's investigation. He contends the Assessor is required to assess the tax based on the taxpayer's federal adjusted gross income and any actions taken to recalculate this amount are ultra vires. He relies on the holding of *Tiedemann v. Johnson*, 316 A.2d 359 (Me. 1974) for the principle that federal adjusted gross income represents the entire taxable income of a Maine resident.

Title 36 M.R.S.A. § 5121 defines taxable income as "that individual's federal adjusted gross income <u>as defined by federal law</u> . . ." (emphasis added). Since state law requires that the Assessor use a taxpayer's adjusted gross income as defined by federal law, he may then look to federal law to determine whether the taxpayer's adjusted gross income is legally correct, consistent with 36 M.R.S.A. §§ 141, 5121. The Assessor contends that, under Maine law, the <u>starting point</u> for determining Maine adjusted gross income is the figures that appears on an individual's federal return for adjusted gross income. *Green v. State Tax Assessor*, 562 A.2d 1217, 1219. (Me. 1989) (emphasis added). The *Green* court explained the holding in *Tiedemann* by stating that "[w]e explicitly rejected in *Tiedemann* the argument advanced by plaintiffs . . . that the Maine Legislature intended that Maine income tax law mirror the federal scheme of income taxation." *Green*, 562 A.2d at 1220. Maine adjusted gross income is defined as "the

3

federal adjusted gross income of that individual," with allowable statutory modifications. 36 M.R.S.A. § 5102(1-C). *Tiedemann* and *Green* require the Assessor to interpret Maine tax law without reference to federal law, except where terms are not defined under state law. *See also* 36 M.R.S.A. § 5102(11). On the other hand, where state law requires definition under federal law, the Assessor must follow federal law. *See* 36 M.R.S.A. § 5121. As the Assessor appears to have properly understood his duty to interpret the applicable federal tax provisions in reviewing the petitioner's 1988 Maine return, this court finds that the Assessor actions are not ultra vires.

C. Williams' Residency for Tax Year 1988.

The Assessor argues that Williams is barred by the doctrine of collateral estoppel from claiming he was not a Maine resident when he received the $556,800 in capital gain. The Assessor maintains that, based on a paragraph from the settlement agreement in Williams I, the issue of Williams' residency in both 1988 and 1989 is precluded. Paragraph 5 from the settlement agreement reads "Mr. Williams agrees that he has been a resident individual of Maine since no later than May 1, 1987, within the meaning of 36 M.R.S.A. § 5102(5)." Record, Vol I, Sect. 2, Exh. A.

Williams raises little argument with his Maine residency for 1988, but takes great exception to any use of the settlement agreement paragraph to determine his residency for subsequent years because the litigation in Williams I dealt solely with the 1988 tax year.

Collateral estoppel, or "issue preclusion," prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case "if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Cline v. Maine Coast*

4

*Nordic*, 1999 ME 72, ¶ 9, 728 A.2d 686, 688 (quotation and citation omitted).

The central issue here, as in Williams I, is Williams' 1988 residency for tax liability purposes. He had a full and fair opportunity to litigate the issue, as evidenced by three days of trial testimony, with similar motivation to litigate (avoidance of tax liability), and the settlement agreement clearly references Williams' admission of Maine residency after May, 1987. While the court will not stretch the settlement provisions beyond their intended scope to included Williams' status for tax year 1989, he is collaterally estopped from raising any argument as to his residency in 1988.

### D. Contingent liabilities used to offset gains earned in liquidation of D.J. Williams, Inc.

D.J. Williams, Inc. was a Maine corporation of which the petitioner was the sole shareholder. D.J. Williams, Inc. in turn was the sole shareholder of several corporate subsidiaries, including Doran-Maine and Doran-Union. D.J. Williams, Inc. was liquidated in December, 1988 and the final return for the corporation listed the value of the distributed assets as $1,271,067. Williams reduced this amount by $801,939 for actual and contingent liabilities, deducted a cost basis of $10,000, and then reported a taxable gain of $59,128. The issue central to this appeal is whether the petitioner should be allowed to deduct $556,800 in contingent liabilities from the capital gain realized by the liquidation.[2] The Assessor disallowed these deductions for three reasons: (1) under federal law, only known liabilities may be used to reduce the amount of a liquidation gain, (2) many of the contingent liabilities were never incurred, and (3) some of the deductions had already been claimed on the final tax return of D.J. Williams, Inc. Williams argues that these deductions were actually unpaid debts of the corporation.

---

[2] The remaining $147,352 in deductions was allowed by the Assessor, although the decision below suggests this was only due to an inadvertent omission from the original assessment. Record, Vol. 1, Sect. 1, Exh. D.

When these "debts" were paid in subsequent years, the payment resulted in a capital loss which the petitioner seeks to carry back to offset any gains realized in 1988. In his petition, Williams also requests the deductions of five additional contingent liabilities (Count III). The Assessor objects to this request as untimely and inappropriate as these additional deductions were never part of the assessment or the decision on reconsideration.

Contingent liabilities may not be used to reduce the gain realized by a shareholder from distributed assets of a corporate liquidation during the year of the liquidation. Rev. Rul. 72-137 (Jan. 1972). Only known liabilities may be realized in the year of liquidation. Id. (emphasis added). If a contingent liability is discharged in a subsequent year, the discharge will create a capital loss in the year it is discharged. Id.; *Arrowsmith v. Commissioner*, 344 U.S. 6 (1952) (known liability of pension amounts to be incurred for a period of years following liquidation allowed as deduction). A taxpayer may not deduct liabilities that were unknown or contingent at the time of liquidation and discharged in a subsequent year even if the return for the year of liquidation is not closed. Rev. Rul. 78-25 (Jan. 1978).

The liabilities in question amounting to $556,800 appear to have been based on an estimate by Williams of the cost of a lawsuit regarding the sale of Doran-Maine's assets to Northeastern Culvert ($195,000), combined with estimated legal fees ($65,000) and the expenses incurred in removing concrete pipe seconds from Doran-Maine's property ($296,800). Record, Vol. I, Sect. 3, Tab 6 (April 8, 1989 letter from Williams to his tax preparer). The Assessor disputes the existence of a "lawsuit" and presents evidence that the dispute was resolved for $46,500 in April, 1989. Williams does not deny the timing or the amount of the settlement with Northeastern Culvert. Def.'s SMF

¶ 33, Pl.'s Opp. SMF ¶ 33. As the discharge of the "lawsuit" liability took place in 1989 and corporation was liquidated on December 30, 1988, the Assessor properly disallowed any deduction of the liability from the distribution in 1988.

The Assessor contends the legal fees and concrete pipe removal costs that also help comprise the $556,800 deduction have already been taken into account in the $147,352 in liability deductions accepted by the Assessor. *See* n. 2. The tenth and eleventh items listed on the petitioner's Schedule D-1 describe $20,000 paid to AMW Trucking for "removal of remaining seconds" and $25,000 for legal and accounting fees. Record, Vol. I, Sect. 3, Tab 6. The factual assertion that these items have already been deducted is contained in the Assessor's Statement of Material Facts at paragraph 43. The petitioner opposes the assertion in his Response to Assessor's Statement of Material Facts by the simple phrase "denied." M.R. Civ. P. 56(h)(2) requires a party opposing a moving party's statement of material facts to "support each denial or qualification by a record citation." In the absence of specific record references, a proffered fact is not properly before the court and cannot provide a basis for judgment. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653. The court is not required to independently search a record from which each fact is drawn. *Id.* Failure to controvert specific paragraphs in the moving party's statement of material facts constitutes noncompliance with [the rule] and will result in the facts not properly controverted being deemed admitted. M.R. Civ. P. 56 (h)(4); *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 6, 721 A.2d 169.

As the petitioner has failed to generate a genuine issue of disputed fact surrounding the Assessor's disallowance of $556,800 of contingent liabilities in tax year 1988, this court will enter judgment on this claim in the Assessor's favor.

The additional contingent liabilities referred to in Count III of the petition are conspicuously absent from the Assessor's decision on reconsideration. Record, Vol. I, Sect. 1, Exh. D. While the court appreciates the Assessor's thorough discussion of these additional issues, the court also acknowledges the principle, and "one generally followed by the Law Court as necessary to a sound appellate practice, that an issue raised for the first time at the appellate stage will be denied cognizance in the appellate review of the case." *Central Maine Power Co. v. PUC*, 405 A.2d 153, 185 (Me. 1979) (citing *Walsh v. City of Brewer, Me.*, 315 A.2d 200, 209 (1974). Even with a de novo hearing under 36 M.R.S.A. § 151, judicial review is confined to a "complete review of questions of law and to limited review of questions of fact only to test the reasonableness of the conclusions reached." *Jackson Advertising Corp. v. State Tax Assessor*, 551 A.2d 1365, 1366 (Me. 1988) (citing *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 170 (Me.1974). As the additional deductions sought by the petitioner are seeing their first light of day on 80C appeal from the Assessor's decision, the issue of their availability to the taxpayer is not properly before this court.

## E. Receipt of Capital Gain

The liquidation plan for D.J. Williams, Inc. was filed on December 30, 1988. The proceeds from the liquidation were placed in an account under the name of Doran-Maine from which Williams alone was authorized to make withdrawals. The Assessor, relying on the federal definition of constructive receipt, argues that Williams received this capital gain in tax year 1988. Constructive receipt is defined in Treasury Regulation § 1.451-2 as money "made available so that he may draw upon it any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of

8

its receipt is subject to substantial limitations or restrictions." The IRS has interpreted this to mean that income, although not actually reduced to a taxpayer's possession, is constructively received during the taxable year in which it is credited to the taxpayer's account, set apart for the taxpayer, or otherwise made available to the taxpayer. Rev. Ruling 80-177, 1980 WL 130047. Notwithstanding the fact that December 30, 1988 was a Friday, the Assessor argues that Williams was in constructive receipt of the capital gain from D.J. Williams, Inc. for the last two days of the 1988 tax year based on the criteria above.

Williams maintains that the corporate proceeds were not distributed to shareholder[s] until 1989. He relies on case law from 1949 as support for the proposition that "mere ability to withdraw funds" is insufficient for a finding of constructive receipt. In *Hyland v. Comm'r of Internal Revenue*, 175 F.2d 422 (2nd Cir. 1949), the directors of a corporation voted a $40,000 salary bonus for the president, who was also a majority shareholder. The vote took place in December, 1942, but the money was not paid out until March, 1943. The taxpayer tried to argue he was in constructive receipt of the bonus in 1942 based on his status as president and an 85% stock owner along with his inherent control of the corporate accounts. The court rejected this argument, pointing to a lack of evidence supporting the taxpayer's unrestricted access to accounts combined with evidence that the corporation had insufficient cash on hand and in the bank in December to meet the payment amount. It was in this context that the "mere ability to withdraw" was discussed.

The *Hyland* case is readily distinguishable from the case at hand. The proceeds from the D.J. Williams liquidation were placed in an existing Fleet Bank account in the name of Doran-Maine. The petitioner was the only person authorized to make

withdrawals from this account. The petitioner testified that his attorney told him not to transfer the money from the Fleet account to personal accounts because there were "too many unanswered and not certain liabilities I had to pay." Williams Depo., p. 56. In March, 1989, Fleet transferred all the money from the Doran-Maine account into a personal account on instructions from the petitioner. Record, Sect. 3, Tab 9. Unlike the *Hyland* case, here the petitioner had exclusive control over the proceeds from D.J. Williams, Inc. and the amount was set apart and made available to him on December 30, 1988. The admonitions by his attorney do not rise to the level of substantial limitation or restriction that could defeat the constructive receipt doctrine. *See, e.g., Harris v. Commissioner*, 477 F.2d 812 (4th Cir. 1973) (constructive receipt even though funds placed in escrow due to taxpayer's incompetency); *Williams v. Commissioner*, 219 F.2d 523 (5th Cir. 1955) (constructive receipt when payments made to escrow account); *Sproull v. Commissioner*, 16 T.C. 244, 1951 WL 302 (1951) (constructive receipt on payment to trust). In light of the discussion above, the court holds that the Assessor has met the burden of proving constructive receipt in 1988 and therefore the petitioner had taxable receipt of the income in tax year 1988.

F. Cost Basis in D.J. Williams, Inc.

Williams contends the Assessor erred in using $10,000 as the cost basis used to calculate Williams gain from the liquidation of D.J. Williams, Inc. In his petition for review, Williams maintains the correct basis is $50,000; in his opposition to the Assessor's motion for summary judgment, he stated his basis in Doran-Maine stock was $110,000; in his deposition testimony taken in 2001, Williams claimed his basis in D.J. Williams, Inc. was $110,000. To clear up this confusion, the court looks to a document submitted as Def.'s Exhibit 6, which is a letter from Williams to the Attorney

General's office explaining that the $110,000 figure is the sum of the basis that Williams had in D.J. Williams, Inc. combined with D.J. Williams, Inc's basis in Doran-Maine ($50,000) and Doran-Union ($50,000). Williams alleges the corporations were consolidated and the combined bases provide the correct cost basis for calculating the gain realized when D.J. Williams, Inc. was liquidated although he has not submitted any evidence to support this claim.

The Assessor takes the position that Williams is bound by his 1988 Federal and State 1040 returns on which he reported his cost basis in D.J. Williams, Inc. as $10,000. As Williams never filed an amended return to change his basis, the Assessor argues he is now making an untimely request for credit and he should be barred from doing so under 36 M.R.S.A. § 5278.

Williams rebuts this argument by calling attention to what he characterizes as the inconsistency of the Assessor's logic. He concedes that he is time barred from correcting his 1988 federal return, but as the Assessor has chosen to open his 1988 Maine return, he contends he should be able to address all the entries in the return, not just those of the Assessor's choosing. Neither party has cited the court to any authority in support of their respective positions, except to the extent the Assessor points to the limitations period in 36 M.R.S.A. § 5278.

As an initial question, the court must determine whether it may limit an assessment appeal to only those figures which the Assessor challenges on the taxpayer's Maine 1040. Next, the court must analyze whether a sole shareholder may consolidate cost bases in parent corporation and its subsidiaries to arrive at a combined figure in order to calculate gain from liquidation of the parent.

Assuming for the sake of this motion that the taxpayer's entire 1988 return may

11

be reviewed by this court, there has been no showing by the petitioner that he has complied with the Internal Revenue Code (IRC) guidelines on consolidation of cost bases. It is a basic axiom of tax law that income realized in the liquidation of a corporation is taxable to the shareholder[s] so far as it exceeds his cost basis in the stock. There is nothing in the record to indicate that Doran-Maine or Doran-Union were ever merged in D.J. Williams, Inc. in order to constitute a complete liquidation of a subsidiary into the parent pursuant to IRC § 332. It appears that it is only by first complying with this IRC provision that D.J. Williams, Inc. may then take a cost basis in the assets of the subsidiaries pursuant to IRC § 334. In light of the $10,000 cost basis reported on the 1988 Federal and State returns, see Record, Vol. 1, Sect. 1, and in the absence of any competent evidence to the contrary, the court finds that Williams has failed to make a prima facie case for amending his cost basis in D.J. Williams, Inc. *See Barnes v. Zappia,* 658 A.2d 1086, 1089 (Me. 1995).

G. Claim for Net Operating Losses

Petitioner alleges the assessment is also incorrect because it fails to reflect net operating losses incurred in 1989, 1990 and 1991 that he is entitled to carry back and deduct for the 1988 tax year. The Assessor rebuts this argument on two grounds. First, the Assessor claims Williams is barred from raising this issue because he testified in Williams I that he had not "materially participated" in the operation of his farm in 1988 which required as a precondition to receipt of a credit for net operating losses. Secondly, the Assessor maintains that this claim is time-barred.

Any claim for credit for a net operating loss must be made within 3 years of the due date of the return for the year of the loss. 36 M.R.S.A. § 5278 (1990 & Supp. 2001). The latest tax year in question here is 1991 and the return for that tax year was due on

12

April 15, 1992. The petitioner's claim therefore expired three years later on April 15, 1995. This conclusion is further bolstered by the language found in *Green v. State Tax Assessor* which states that where a "loss is not 'entered into' the computation of the taxpayer's federal adjusted gross income in the tax year in question, there is simply no basis for taking the loss into account in computing Maine adjusted gross income." 562 A.2d at 1219-1220 (citation omitted). According to the record and the decision issued under Williams I, the petitioner did not make a claim to these net operating losses until March, 1997. Therefore, as the petitioner has failed to controvert the statute of limitations issue in any of his statements of material fact, the claims for carry back of net operating losses are time barred. In light of this finding, the court need not address the estoppel argument raised by the Assessor on this matter.

## III.    Conclusion

Therefore, for all the reasons above, the entry shall be:

State Tax Assessor's Motion for Summary Judgment is GRANTED; petitioner's 80C appeal is DENIED.

Dated:  June _19_, 2002

Donald H. Marden
Justice, Superior Court

13

STATE OF MAINE                          SUPERIOR COURT
                                        CIVIL ACTION
KENNEBEC, ss.                           DOCKET NO. AP-99-89


DONALD J. WILLIAMS,

           Petitioner

      v.                                **CORRECTION ON ORDER**
                                        **ON SUMMARY JUDGMENT**
STATE TAX ASSESSOR,

           Respondent


On June 19, 2002, this court granted summary judgment to the respondent and

directed a docket entry in error. The docket entry previously ordered is rescinded and

the following corrected docket entry shall be entered:

        State Tax Assessor's motion for summary judgment is GRANTED;
    decision of the State Tax Assessor on reconsideration is AFFIRMED.


Dated: June____, 2002

_____
Donald H. Marden
Justice, Superior Court

Date Filed __12/22/99__ __Kennebec__ Docket No. __AP99-89__
County

Action __Petition for Review__
80C

# J. MARDEN

~~Martin I. Eisenstein, Esq.~~
~~184 Main Street~~
~~P.O. Box 3070~~
~~Lewiston, Maine 04243-3070~~

Donald J. Williams                          vs.   State Tax Assessor

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Alfred Frawley, Esq. XXXXXXXXXXXXXXXXXXXXXX PO Box 9546 XXXXXXXXXXXXXXXX. Portland, ME XXXXXXXXXXXXXXXXX 04112 P.O. Box 9540 XXXXXXXXXXXXXXXXXXX 492 Ridge Rd Monmouth Maine 04259 933-2000 | Thomas Knowlton, AAG State House Sta. 6 Augusta Maine 04333 |

| Date of Entry | |
|---|---|
| 12/22/99 | Petition for Review of Final Agency Action, filed. s/Frawley, Esq. |
| 1/4/00 | Letter entering appearance for State Tax Assessor, filed. s/Knowlton, AAG. |
| 2/3/00 | State Tax Assessors motion for procedural order filed. s/Knowlton AAG Proposed procedural order filed. |
| 3/29/00 | PROCEDURAL ORDER, Marden, J. (Discovery deadline is February 2, 2001. Any summary judgment motion to be filed by March 30, 2001.) Copies mailed to attys of record. |
| 4/10/00 | Notification of Discovery Service, filed. s/Knowlton, AAG State Tax Assessor's First Request for Production of Documents by Petitioner served on Alfred C. Fawley, Esq. on 4/7/00 |
| 6/8/00 | Notification of Discovery Service, filed. s/Frawley, Esq. (filed 6/7/00) Petitioner's Response to the State Tax Assessor's First Request for Production of Documents served on Thomas A. Knowlton, AAG on 6/6/00 |
| 9/18/00 | Notification of Discovery Service, filed. s/Knowlton, AAG State Tax Assessor's First Set of Interrogatories Directed to Petitioner Donald J. Williams served on Alfred C. Frawley, Esq. on 9/15/00 |
| 11/17/00 | Notification of Discovery Service filed on 11/15/00. s/J. Hanley, Esq. Petitioner's Answers to the State Tax Assessor's First Set of Interrogatories served on Thomas Knowlton, AAG on 11/14/00. |
| 11/27/00 | Notification of Discovery Service, filed. s/Knowlton, AAG Notice of Deposition of George Roberge and Notice of Deposition of Keith Allen served on Alfred C. Frawley, Esq. on 11/22/00 |
| | Letter from Atty. Knowlton regarding discovery. |